12-3893-cv
*K.L. v. N.Y.C. Dep't of Educ.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of July, two thousand and thirteen.

PRESENT:

> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> BARRINGTON D. PARKER,
>
> > *Circuit Judges.*

---

K.L., by her parents M.L. and B.L.,

> *Plaintiff-Appellant,*

> v.                                                                No. 12-3893-cv

NEW YORK CITY DEPARTMENT OF
EDUCATION,

> *Defendant-Appellee.*

---

**FOR PLAINTIFF-APPELLANT:**          GARY S. MAYERSON (Tracey Spencer Walsh, Maria C. McGinley, *on the brief*), Mayerson & Associates, New York, NY.

1

**FOR DEFENDANT-APPELLEE:**   KAREN M. GRIFFIN (Francis F. Caputo, David A. Rosinus, Jr., Lisa Khandhar, *on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-appellant K.L., by her parents, brought this suit under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq.*, alleging that defendant-appellee New York City Department of Education (the "District") failed to provide K.L. with a free and appropriate public education ("FAPE") that adequately accounted for her severe autism. On this basis, the complaint requested compensation for K.L.'s attendance at a private school during the 2009-10 school year. After the District Court granted summary judgment to the District, K.L. filed this appeal. We assume the parties' familiarity with the relevant facts and procedural history, which we briefly summarize below.

## BACKGROUND

### i.

K.L., who is now twelve years old, has a severe form of autism leading to many challenges, including "cognitive delays and attending difficulties, as well as oral motor/articulation difficulties, deficits in receptive and expressive language, and weaknesses in socialization and pragmatic language skills." App'x 2261 (opinion of State Review Officer). In March 2009, the District held a meeting to generate an individualized education program ("IEP") for K.L. Attending the meeting were a District representative, who was a special education teacher; a school psychologist; K.L.'s mother; a parent representative; and one of K.L.'s teachers, who participated by phone.

Based on the information gathered prior to and during the meeting, this team "recommended that the student be classified as a student with autism and placed in a 6:1+1 special class with the support of a 1:1 crisis management paraprofessional." App'x 2265. The team also "recommended that the student receive individual speech-language therapy five times per week, individual [occupational therapy] five times a week, and individual [physical therapy] three times a week," and "attend a 12-month program and receive adapted physical education and special transportation." *Id.* Moreover, the IEP

included goals and objectives related to the student developing reading and math readiness skills, improving motor planning and sequencing skills, improving muscle strength and endurance, improving visual spatial and coordination skills, improving engagement and pragmatic language skills, improving receptive and expressive language skills, increasing oral motor and articulation skills, improving play skills, demonstrating increased independence in [activities of daily living], improving fine motor skills, and improving sensory processing and regulatory skills.

*Id.* 2265-66. A behavioral intervention plan ("BIP") attached to the IEP "identified numerous behaviors that interfered with the student's learning, including distractibility and a short attention span as demonstrated by out of seat behavior, chewing and shredding of clothes, and hitting and kicking when frustrated." *Id.* at 2266. The BIP called for "positive reinforcements that are intrinsic; redirection and modeling of appropriate behaviors; use of appropriate sensory support as required, such as brushing; consistent and contingent use of reinforcers; and access to sensory materials prior to engagement in activities." *Id.*

After the IEP was developed, K.L.'s parents decided to place her in private schooling for the 2009-10 school year. The parents then brought a due process challenge, alleging that the District had failed to offer K.L. a FAPE because, as the State Review Officer summarized,

the March 2009 CSE failed to properly evaluate the student, failed to assign a needed 1:1 health paraprofessional and instead assigned a "crisis" paraprofessional, did not develop a placement at the CSE meeting with the parents' participation, did not indicate the staffing ratio for the student during adaptive physical education, failed to recommend extended day services, did not consider assistive technology, failed to develop proper goals and objectives, did not base the behavior intervention place on a functional behavioral assessment (FBA) and failed to properly address the student's communications needs given that she is non-verbal. The parents also claimed that the March 2009 IEP did not adequately address the student's specific aggressive behaviors. They further argued that the IEP did not provide sufficient related services, services outside of school, and 1:1 instruction. The parents also argued that the Rebecca School and MCC were appropriate placements and that the equities favored awarding the parents tuition reimbursement.

*Id.* at 2270-71 (internal citations omitted).

In an opinion dated November 8, 2010, the impartial hearing officer ("IHO") granted the parents compensation for the cost of K.L.'s private schooling during the 2009-10 school year, as well as transportation costs. *Id.* at 2180-2253. A State Review Officer ("SRO") then reversed that

decision in an opinion dated February 14, 2011. *Id.* at 2260-80. We assume the parties familiarity with these opinions, which are summarized in the District Court's opinion, *see* Special App'x 9-16, and discussed as necessary below.

**ii.**

K.L., by her parents, then appealed the SRO's decision in the Southern District of New York, pursuant to 20 U.S.C. § 1415(i)(2)(A). *See R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (discussing the procedural aspects of the IDEA). The District Court affirmed the decision of the SRO, rejecting each of K.L.'s arguments.

*Shredding.* With respect to the purported failure of the IEP to address K.L.'s tendency to shred and chew her clothes, the District Court agreed with the SRO's assessment that the IEP and BIP adequately recognize and address that problem. In particular, K.L. would be assigned a 1:1 crisis paraprofessional who could adequately monitor and help improve K.L.'s behavior. Special App'x 25-26.

*Assessment.* The District Court also rejected K.L.'s argument that the IEP failed to include adequate methods of assessment. The Court noted that the IEP would be assessed by her teacher and would receive three progress reports during the year. These assurances, the Court held, satisfied the need for adequate assessment. *Id.* at 26-27.

*Methods.* Regarding K.L.'s argument that the IEP failed to discuss teaching methodologies, the District Court explained that the IEP's guarantee of "behavior intervention" strategies was sufficient. *Id.* at 27.

*Parental Involvement.* K.L. further argued that the IEP development process failed to provide for sufficient parental participation and consultation. The District Court rejected this argument on the basis that K.L.'s mother was a member of the team that developed the IEP, even though some of the language in the IEP was drafted by other team members prior to the March 2009 meeting. Moreover, the District Court noted, failure to involve the parents in the selection of a particular school for the child does not constitute an IDEA violation. *See id.* at 30 (citing *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009)).

*Parental Counseling.* With respect to K.L.'s argument that the IEP failed to provide for parental counseling, the District Court explained that parental counseling was automatically part of K.L.'s placement, and that any deficiency in parental counseling did not render K.L.'s education inadequate. *Id.* at 31-32.

4

*Instruction and Placement.* Regarding K.L.'s school placement, the District Court held that the IEP provided for sufficient instruction, including an adequate amount of 1:1 instruction, given K.L.'s needs. The Court explained that "the SRO properly acknowledged the contrary evidence and weighed it against the evidence on which he relied – a weighing much better suited to the SRO than this Court." *Id.* at 34. With respect to alleged safety concerns at K.L.'s proposed public school, the S.R.O. held that those allegations were waived given that they were not initially raised in the parents' due process complaint or agreed to by the opposing party. *Id.* The Court also noted that evidence regarding how the IEP would operate in practice merely explained—and did not *supplement*—the IEP's terms. *Id.* at 36.

This appeal followed.

## DISCUSSION

### A.

The appropriate legal standards in IDEA cases have been the subject of several recent decisions of this Court. *See, e.g.*, *R.E.*, 694 F.3d at 184-92; *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012). Notably, "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *Gagliardo v. Arlington Cen. Sch. Dist.*, 489 F.3d 105, 112-13 (2d Cir. 2007). "Where, as in our case, the IHO and SRO disagree, the general rule is that courts must defer to the reasoned conclusions of the SRO as the final state administrative determination . . . unless [the court] concludes that the [SRO] decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E.*, 694 F.3d at 189 (internal quotation marks omitted).

On appeal, K.L.'s parents raise a host of arguments, which we have considered fully and now reject for the reasons stated below.

### i.

The parents argue that the District Court improperly deferred to the SRO. We disagree. Having assessed the record, we conclude that the SRO's decision is well-reasoned and deserves deference as "the final state administrative determination." *R.E.*, 694 F.3d at 189 (internal quotation marks omitted). Most of the parents' arguments regarding deference to the SRO decision are either conclusory or coterminous with their other arguments. For instance, the SRO concluded that the assigned 1:1 crisis management paraprofessional could adequately handle K.L.'s tendency to shred or eat her clothing. The parents focus particularly on this conclusion as lacking a sufficient explanation, but that conclusion is straightforward and intuitive, and the parents offer no argument

5

or evidence suggesting that a crisis management paraprofessional would be inadequate to prevent K.L. from shredding her clothing. The parents' other arguments are similarly unconvincing.

**ii.**

The parents further assert that the SRO and District Court impermissibly relied on "retrospective" testimony. We have held that "[a] school district cannot rehabilitate a deficient IEP after the fact" by relying on testimony that "effectively amends or fixes" a deficient IEP "by showing that the child would, in practice, have received the missing services." *R.E.*, 694 F.3d at 186. Nonetheless, we have explained that "testimony may be received that explains or justifies the services listed in the IEP." *Id.*

The parents point to plenty of evidence in the record that is "retrospective" in nature, such as the degree of 1:1 support that K.L.'s teacher would have provided in the 6:1:1 classroom model. *See id.* at 187 ("[I]f a student is offered a staffing ratio of 6:1:1, a school district may introduce evidence explaining how this structure operates and why it is appropriate. It may not introduce evidence that modifies this staffing ratio (such as testimony from a teacher that he would have provided extensive 1:1 instruction to the student)."). The parents also correctly point out that the SRO occasionally cited retrospective evidence in its opinion, such as its statement: "I note that testimony from the special education teacher of the proposed class indicated that all of the students in the class received daily 1:1 instruction from her, and that the amount of 1:1 instruction provided was determined by students' individual needs." App'x 2278.

The question before us, however, is not whether the SRO relied on impermissible retrospective evidence, but whether sufficient *permissible* evidence, relied on by the SRO, supports the SRO's conclusion that the IEP offered K.L. a reasonable prospect of educational benefits. *See infra.* Restrictions on the use of retrospective evidence are rooted in the principle that parents must be able to decide rationally whether to accept a proffered public school placement or to send their child, at the risk of non-reimbursement, to private school. In most cases, parents make this difficult decision on the basis of the IEP. Accordingly, at this moment of parental decision-making, the IEP must offer the student a FAPE on its own terms. Similarly, the SRO must assess the IEP from this *ex ante* perspective.

In the case before us—which, it may be noted, the SRO decided *before* we disallowed the use of retrospective evidence in *R.E.*—we conclude that any use of retrospective evidence does not disturb the SRO's conclusion that the IEP was adequate on its own terms. The SRO explained that "the plan, which the district's paraprofessional would implement under the direction of a 'licensed' special education teacher, addressed the need to provide the student with redirection and sensory support, the need to assist the student with communication, and the need to decrease the student's

mouthing of string and aggressive behaviors," and that the IEP also provided for "individual related services" thirteen times per week in the form of speech-language therapy, occupational therapy, and physical therapy." *Id.* at 2278-79. Accordingly, just as we held in *R.E.*, "[d]espite his reliance on improper testimony, the SRO also based his decision on an appropriate finding: he found no evidence in the record that [K.L.] actually required 1:1 teacher support, as opposed to 1:1 support by a dedicated aide [along with the other relevant services provided in the IEP], to make educational progress." *R.E.*, 694 F.3d at 192. "The adequacy of 1:1 paraprofessional support as opposed to 1:1 teacher support is precisely the kind of educational policy judgment to which we owe the state deference if it is supported by sufficient evidence, as is the case here." *Id.* That is particularly true in this case, where the weight of the testimony regarding K.L.'s need for 1:1 assistance seems principally to have borne on her behavioral and attention problems, and not on her learning needs *per se.* In any case, sufficient permissible evidence supports the SRO's determination that 1:1 paraprofessional support (for which the IEP itself provided) would allow K.L. to receive educational benefits.

The parents further argue that the IEP was substantively deficient because it did not mention evaluative methods or a particular teaching methodology. We disagree, for substantially the reasons stated in the District Court's well-reasoned opinion. *See* Special App'x 26-27. Moreover, the parents' reliance on *R.E.*, 694 F.3d at 193-94, is misplaced. In that case, evidence demonstrated that the student needed a *particular* teaching method, *see id.*, and the parents have not demonstrated that K.L. had a similar need that was unmet in the IEP.

In sum, we do not disturb the SRO's finding that K.L.'s IEP was substantively adequate. In doing so, we reiterate that an IEP must be "reasonably calculated to enable the child to receive education benefits," *id.* at 190 (alteration and quotation marks omitted), but "it need not furnish every special service necessary to maximize each handicapped child's potential," *M.H.*, 685 F.3d at 224 (alteration and internal quotation marks omitted). "Under the IDEA, for a child's IEP to be adequate, it must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement." *Id.* (alterations and internal quotation marks omitted). The SRO correctly concluded, notwithstanding any retrospective evidence offered at the hearing before the IHO, that K.L.'s IEP met this basic standard.

### iii.

The parents also argue that the IEP failed to include a functional behavioral assessment ("FBA") or formal behavior intervention plan ("BIP"), and that these deficiencies denied K.L. a FAPE. We reject this argument for substantially the reasons stated in the District Court's opinion. *See* Special App'x 24-26. "We have held that failure to conduct an FBA is a procedural violation, but that it does not rise to the level of a denial of a FAPE if the IEP adequately identifies the problem

behavior and prescribes ways to manage it." *R.E.*, 694 F.3d at 190. This is just such a case. Moreover, as the SRO and District Court explained, a suitable BIP addressed K.L.'s behavioral issues.

**iv.**

In addition to the provisions in the IEP involving K.L. directly, the parents also cite the lack of an express provision regarding parental training as grounds for reversal. As we have noted, "New York regulations require that an IEP provide for parent counseling and training for the parents of autistic children." *R.E.*, 694 F.3d at 191. Yet "the failure to include parent counseling in the IEP is less serious than the omission of an FBA," because "the presence or absence of a parent-counseling provision does not necessarily have a direct effect on the substantive adequacy of the plan." *Id.* The lack of parental training in the IEP itself also does not implicate the reliance interests that caused us to bar "retrospective evidence." *Id.* at 186. Notably, "because school districts are required by [New York law] to provide parent counseling, they remain accountable for their failure to do so no matter the contents of the IEP. Parents can file a complaint at any time if they feel they are not receiving this service." *Id.* at 191. Accordingly, we conclude, substantially for the reasons stated in the District Court's opinion, *see* Special App'x 31-33, that the failure to provide for parental counseling in the IEP did not constitute denial of a FAPE.

**v.**

The parents further argue that K.L.'s school placement was inadequate and unsafe. We disagree, for substantially the reasons stated in the District Court's opinion. *See id.* at 33-38. In particular, "[t]he appropriate inquiry is into the nature of the program actually offered in the written plan," not a retrospective assessment of how that plan would have been executed. *R.E.*, 694 F.3d at 187. Moreover, K.L. failed to timely raise her argument about safety. *Id.* at 187-88 (noting that the so-called "due process complaint" must list all alleged deficiencies in the IEP).

**B.**

Because the District offered K.L. a FAPE, the District Court properly granted summary judgment to the District. Accordingly, we have no need to consider the other prerequisites for reimbursement for placing K.L. in a private school.

8

**CONCLUSION**

We have reviewed all of K.L.'s arguments and find them to be without merit. Accordingly, the judgment is **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk